IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LEIGH SOSEBEE,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. _____ |
| | § | |
| **TEXAS ALCOHOLIC BEVERAGE COMMISSION,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Leigh Sosebee files her Complaint complaining of TEXAS ALCOHOLIC BEVERAGE COMMISSION (hereinafter referred to as "TABC" or "Defendant"), and for causes of action shows as follows:

### I.   PARTIES

1. Plaintiff Leigh Sosebee (hereinafter "Sosebee" or "Plaintiff") is an individual and a citizen of Texas.

2. Defendant Texas Alcoholic Beverage Commission is a Texas entity who has a central office in Dallas County, Texas. Process may be served on TABC by serving its registered agent located at the registered agents designated address.

3. At all relevant times of the claims of discrimination, Defendant employed over 200 employees.

## II. JURISDICTION AND VENUE AND DISCOVERY

4. This Honorable Court has jurisdiction and venue over this matter pursuant to 28 U.S.C. §§ 1331 & 1343, and Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 United States Code §§ 2000e-2(a) and 2000e-3, as federal questions are presented. This Court has supplemental jurisdiction to hear the State Claims of Plaintiff under 28 U.S.C.A. § 1367(a).

5. Plaintiff has satisfied all procedural pre-requisites to filing this lawsuit, including the filing of a charge with the United States Equal Employment Opportunity Commission, for itself and as receiving agent for the Texas Commission on Human Rights. The Equal Employment Opportunity Commission ("EEOC") has dismissed Plaintiff's administrative complaint of gender and racial discrimination and has issued Plaintiff a Right to Sue Letter. Attached hereto and incorporated herein as though fully set forth at length are the following documents: "Exhibit A." Plaintiff's Right to Sue Notice.

6. Exhibit A demonstrates that Plaintiff asserted a complaint administratively with the EEOC and that the EEOC resolved Plaintiff's complaint to fruition by providing her with a "Right to Sue". *See, e.g., Shepard v. Longhorn Pipeline Partners*, LP 534 F. Supp. 2d. 838, 840 (W.D. Tex. 2007).

7. Venue is proper in that a Defendant is a resident of or maintains its office in this District and Division.

///

///

### III.   FACTUAL BACKGROUND

8.     Plaintiff has worked for the TABC since October 3, 2007, and since then she has primarily worked in the Cleburne office of the TABC, located at 1102 E. Kilpatrick, Cleburne, TX 76031. Plaintiff's current position is Agent I, and she received a raise when she was promoted from Agent Trainee to Agent I, after 1 year of probationary employment. Plaintiff is due for a promotion to Agent II on October 3, 2011, with a pay raise to go with it, as that will be her 4th anniversary with TABC.

9.     On the evening of January 8, 2009, Plaintiff was called a "cunt" by Agent Todd Mauthe, and accused by him of "sleeping with a nigger if given a chance." On the morning of January 9, 2009, Plaintiff informed Sgt. Tana Travis of the incident with Agent Mauthe described above. Immediately after she complained, the other Agents, Victor Bulos, Todd Mauthe and Dale Ramirez, in particular, started treating Plaintiff differently than the other agents and then started harassing her.

10.    On February 12, 2009, Plaintiff's computer screen was vandalized. Devil horns, a mustache, and a liquor bottle were drawn on a picture of Plaintiff that was her desktop background. Plaintiff's Agent Academy Class President plague was also vandalized when someone typed "Shut Up Girl" and 2 other names over her name on the plaque. The file cabinet at Plaintiff's desk was also broken into on or about this same date.

11.    In April of 2009, Plaintiff was yelled at in the office by Agent Bulos, and told that she was not trusted in the office. Sergeant Travis witnessed this incident and did nothing.

12.    In May of 2009, Plaintiff was assigned by Sgt. Chris Hamilton to only work with him, no exceptions. In Spring 2009, Plaintiff witnessed Agent Bulos refer to her as "Stupid Bitch" to other Agents in the office. Additionally, a typed note along with a packet of gum was

left on her desk requesting that she chew gum or floss. Plaintiff spoke with Sgt. Travis on more than one occasion about the harassment from the other Agents. Sgt. Travis told her that Plaintiff basically needed to fix the situation because Plaintiff was the problem, not the other Agents.

13.    On June 19, 2009, Agent Dale Ramirez refused to assist Plaintiff in a Use of Force incident, struggle, and arrest of a PI and Evading Arrest Suspect. Then, he stood over Plaintiff while she struggled with the suspect and did nothing to assist her.

14.    On June 20, 2009, Plaintiff discussed the June 19th incident with Agent Ramirez and Sgt. Travis. Plaintiff was told by Sgt. Travis that Sgt. Travis approved of Agent Ramirez not assisting Plaintiff in the struggle the previous night because Plaintiff had never been in a fight before and she needed to see what it was like. Shortly thereafter, Plaintiff was criticized in front of both Sergeants and other Agents by Agent Ramirez about Plaintiff's inability to work by herself and how she could not handle the June 19th suspect by herself. Sergeants stayed silent and did not react at all.

15.    In the Summer of 2009, Plaintiff was yelled at on scene in front of Agent Trainees and arrestees by Agent Bulos. Agent Bulos criticized and demeaned Plaintiff about how she had handled an earlier situation in which the other Agents watched and laughed as Plaintiff struggled to communicate with a frightened Asian woman who did not speak English. Plaintiff heard a radio transmission of Agent Ramirez referring to her as a midget. Sgt. Hamilton was in the vehicle with Plaintiff and instead of protecting her, he justified the comments. Next, there was a note posted on her bulletin board about her desk being "next to" Sgt. Hamilton's; she gave the note to Sgt. Hamilton and no action was taken.

16.    Agent Ramirez told other Agents in the presence of Plaintiff that another Agent did not "suck Sgt. Hamilton's dick well enough" and that was why Plaintiff was being assigned a

new vehicle instead of that other Agent. Sgt. Hamilton and multiple other Agents were present and clearly heard this comment, but no action was ever taken. Plaintiff was told by Sgt. Hamilton that during a shift meeting where Plaintiff was off and not present, Agent Bulos openly criticized Plaintiff's abilities as an Agent.

17. In August of 2009, Plaintiff was assigned by Sgt. Hamilton to do push-ups and sit-ups at the end of each shift for mistakes made during that shift, with which Sgt. Hamilton regularly kept track. Sgt. Hamilton held Plaintiff accountable for "mistakes" that all agents made every shift but Plaintiff was the only Agent required to do sit-ups and push-ups. The alleged mistakes were talking too much on scene, asking stupid questions, asking questions Plaintiff should know the answer too, and officer safety mistakes.

18. In September of 2009, Sgt. Hamilton sent texts to Agent Scott Moore about the color of Plaintiff's underwear and implied that his finger smelled like Plaintiff.

19. In October of 2009, Agents Bulos and Ramirez complained to Sgt. Marcus Stokke about the inappropriate texts described above and they accused Sgt. Hamilton and Plaintiff of engaging in an inappropriate relationship.

20. Plaintiff was questioned about her relationship with Sgt. Hamilton by Captain Charlie Cloud and Lieutenant Jeff Gladden. Plaintiff requested a meeting the following day and informed Lt. Gladden of all the harassment she had been subjected to because for the first time, Plaintiff realized that Lt. Gladden did not know about how Plaintiff was being sexually harassed and retaliated against even though Sgt. Hamilton represented to Plaintiff that Lt. Gladden knew and he did not want to do anything about Plaintiff's complaints.

21. During the entire time described above, Plaintiff complained weekly and often daily to Sgt. Hamilton about the other Agents' and Sgt. Travis' harassment of her. He

represented to Plaintiff that Lt. Gladden was also aware of what was going on. Sgt. Hamilton threatened Plaintiff that if she made a formal complaint, the agency would investigate her and she would ultimately face termination. Sgt. Hamilton always Plaintiff that she was asking for the sexual harassment and hostile work environment with how she "behaved' and therefore it was her problem to fix.

22. On October 14, 2009, Sgt. Hamilton was put on Administrative Leave with pay pending investigation. On November 12, 2009, Plaintiff had her first interview with Investigator Meissner of the Office of Professional Responsibility ("IA") about the aforementioned text messages. During this interview, Plaintiff also informed Meissner of other incidents of harassment, also described above.

23. In December of 2009, Plaintiff had her second interview with Meissner about events from February of 2009 to the present. On December 29, 2009, Plaintiff asked to be transferred to the Fort Worth Office upon Captain Cloud's suggestion, and she was transferred.

24. In January of 2010, Plaintiff traveled to Austin to make a formal complaint of Sexual Harassment and Hostile Work Environment to Lt. Roland Luna of the Office of Professional Responsibility. The following day, several Agents and Supervisors were put on Administrative Leave with pay pending investigation. Captain Cloud asked Plaintiff if she wanted to be officially transferred to the Cleburne Outpost. However due to the animosity Plaintiff was receiving from all other Agents at the time and having never met the Agent assigned to the Cleburne Outpost, Plaintiff declined and discussed her reasoning with Lt. Gene Anderson.

25. In February of 2010, Plaintiff was assigned to work out of the Cleburne Outpost, but she was never officially transferred. In the Summer of 2010, Sgt. Hamilton was terminated.

In late July of 2010, Agents Bulos, Ramirez, and Mauthe were terminated and Sgt. Travis was given three days suspension without pay and put on six months probation. All of the agents and sergeants can appeal the decisions.

26. On August 17, 2010, the TABC Officer's Association President sent out an email to the entire association stating they had reopened Plaintiff's sexual harassment investigation to evaluate the treatment of the terminated Agents. Plaintiff was never informed prior to this email that the investigation was being reopened by anyone and was never contacted by the TABCOA President. Plaintiff immediately resigned from the association.

27. On September 2, 2010, Plaintiff set up an appointment to meet with Administrator Alan Steen. On September 3, 2010, Plaintiff met with Administrator Steen about her side of the investigation. Steen informed Plaintiff that he was disappointed that Plaintiff had not come forward about the treatment sooner. Plaintiff rebutted that she regularly complained to her supervisor, Sgt. Hamilton, and she complained multiple times to Sgt. Travis. However, she was always told that it was her fault and if she complained then she would be terminated. Steen informed Plaintiff that the investigation was reopened and he told her that it was possible for the terminated Agents to get their jobs back. During this meeting, it was clear to Plaintiff that Steen had not read any of the investigation or relevant statements. Instead, he simply relied on Lt. Luna's and other agents' summaries of what had happened because Steen asked Plaintiff so many questions that were all answered in detail in the investigation reports.

28. On September 17, 2010, a weekly email was sent out to all Agents from Steen praising Agent Ramirez for his work on an investigation and stating that all Agents should strive to be more like Agent Ramirez. Subsequently the same email was recalled.

29. On or about September or October of 2010, the Agents whom were terminated for harassing Plaintiff were reinstated and allowed to resign. On October 4, 2010, Captain Cloud issued an IOC suspending Plaintiff for two days without pay for the September 3, 2010 Fleet Incident.

30. On October 31, 2010, Plaintiff moved to Arlington DO and as of November 1, 2010 Plaintiff was assigned to day shift. She was told that it was because the Agency wanted her to help with the upcoming Super Bowl.

31. On November 16, 2010, Plaintiff received an IOC from Assistant Chief Rod Venner dated November 9, 2010 wherein he suspended Plaintiff for five days without pay for Insubordination related to September 3rd Fleet Incident.

32. On November 23, 2010, Plaintiff sent an appeal through the TMPA assigned Attorney, Terry Daffron Porter. From January of 2011 through February 1, 2011, Plaintiff was assigned to research the Super Bowl Event on the internet and create complaints when appropriate.

33. From February 4-6, 2011, Plaintiff was not given any Super Bowl assignments even though she had previously been told by Lt. Anderson that she would be allowed to work the Super Bowl partnered with him. Lt. Anderson spent most of the weekend in the office to be ready for any incident at the Super Bowl and Plaintiff was told to stay home.

34. On March 17, 2011, Plaintiff met with Chief Joel Moreno about her appeal. On April 27, 2011, Plaintiff received a letter at home from Chief Moreno, dated April 15, 2011, denoting their final decision to suspend Plaintiff for two days without pay.

35. On May 4, 2011, Plaintiff was told to serve her suspension on May 5-6, 2011 by Lt. Anderson. Lt. Anderson also told Plaintiff that she was still assigned to day shift because he had not been advised of her status by Austin.

## IV.     CAUSES OF ACTION

### FIRST COUNT: SEXUAL HARASSMENT
### (42 U.S. Code § 2000e)

36. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 36.

37. This action arises in part under federal law, to wit: applicable provisions of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 United States Code §§ 2000e-2(a) and 2000e-3, and federal regulations, and Title 42 United States Code § 1981a(c).

38. The conduct above by Defendants constitutes unlawful sex discrimination under Title VII of the Civil Rights Act, Title 42 United States Code §§ 2000e-2 (a) et seq.

39. As a proximate result of the actions of Defendants, Plaintiff has suffered job loss, wage loss, impairment of earning capacity, emotional distress and other damage in an amount to be proved at trial.

40. The conduct above entitles Plaintiff to recover punitive damages pursuant to Title 42 United States Code § 1981(b)(1) against Defendants on the ground that defendants acted with malice or with reckless indifference to Plaintiff's rights.

### SECOND COUNT: RETALIATION
### (42 USCA § 2000e-3 et seq.)

41. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 41.

42. The conduct above by Defendants constitutes unlawful retaliation for complaints of sex discrimination under Title VII, 42 United States Code §§ 2000e-3 et seq. As a proximate

result of the actions of defendants, Plaintiff has suffered wage loss, job loss, impairment of earning capacity, emotional distress, and other damage in an amount to be proved.

43. The conduct above entitles Plaintiff to recover punitive damages pursuant to Title 42 United States Code § 1981(b)(1) against Defendants on the ground that defendants acted with malice or with reckless indifference to Plaintiff's rights..

**THIRD COUNT – GENDER DISCRIMINATION**
(**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.**)

44. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 44.

45. The foregoing conduct violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., which makes discrimination against employees on the basis of sex illegal. Discrimination "on the basis of sex" includes discrimination based on pregnancy, childbirth, and sex stereotyping. 42 U.S.C. §§ 2000e(k); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250-51 (1989).

46. Plaintiff is informed, believes, and herein alleges that her gender was a motivating reason behind Defendants' following actions: (1) Plaintiff was sexually harassed, verbally abused, and her personal and work items were vandalized by her immediate supervisors during work hours at her place of employment at TABC; (2) Plaintiff continuously reported this harassment to her Sergeants, as well up the chain of command at the TABC, but she was advised by Sgt. Hamilton that if she complained formally, then she would be terminated; and (3) Plaintiff complained formally anyway and was eventually suspended without pay, transferred and is now no longer allowed to work out in the field and do her job. No other similarly situated male agents were treated this adversely. This conduct constituted unlawful sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq.

47. As a result of Defendants' discriminatory actions against her, Plaintiff has and continues to suffer damages in the form of lost wages and other employment benefits, and severe emotional and physical distress, the exact amount to be proven at trial.

48. Defendants and each of them acted for the purpose of causing Plaintiff to suffer financial loss and severe emotional distress and physical distress and are guilty of oppression and malice, justifying an award of exemplary and punitive damages.

49. Plaintiff has incurred, and continues to incur, legal expenses and attorneys' fees. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays leave of court to amend this Complaint when the amounts are more fully known.

## FOURTH COUNT: VIOLATION OF EQUAL PROTECITON ON THE BASIS OF SEX
### (42 U.S.C.A. § 1983)

50. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 50.

51. The above described conduct by all named Defendants violated the right of Plaintiff not to be deprived of equal protection of the laws on the basis of sex under the 14th Amendment to the United States Constitution.

52. Plaintiff requests relief as described in the Prayer for Relief below.

## FIFTH COUNT: NEGLIGENT HIRING, SUPERVISION, AND/OR RETENTION

53. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 53.

54. TABC negligently hired, supervised, and/or retained its employees, Victor Bulos, Todd Mauthe, Dale Ramirez, and Chris Hamilton.

55. Plaintiff is informed and believes and thereon alleges that TABC knew or should have known of Bulos', Mauthe's, Ramirez's, and Hamilton's unfitness or incompetence to

perform the job but unreasonably retained and/or failed to supervise Bulos, Mauthe, Ramirez, and Hamilton.

56.     Plaintiff is further informed and believes and thereon alleges that TABC breached its duty of care by failing to properly supervise, and by retaining, Bulos, Mauthe, Ramirez, and Hamilton, as follows: (a) by violating TABC's own sexual harassment policy in failing to take action following reports of sexual harassment committed by Bulos, Mauthe, Ramirez, and Hamilton; (b) by disregarding prior complaints of harassment against Mauthe and Hamilton and placing them in supervisory positions over Plaintiff; (c) by retaining Bulos, Mauthe, Ramirez, and Hamilton as employees, all of which created an unreasonable risk of harm to all female TABC employees. The harm suffered by Plaintiff could have been avoided if TABC had reasonably supervised Bulos, Mauthe, Ramirez, and Hamilton because it would have discovered that Bulos, Mauthe, Ramirez, and Hamilton were acting negligently and unlawfully.

57.     The harm caused by Bulos, Mauthe, Ramirez, and Hamilton was directly related to their unfitness for the job.

58.     As a further proximate result of TABC's acts and/or omissions, Plaintiff has suffered humiliation, mental anguish, and emotional distress in an amount to be proven at trial.

### SIXTH COUNT:  SEXUAL HARASSMENT
**(Section 21.051 of the Texas Labor Code)**

59.     Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 59.

60.     Defendants sexually harassed Plaintiff in violation of Section 21.051 of the Texas Labor Code with respect to hostile and malicious acts Plaintiff was subjected to during her employment.

61. By reason of Defendant's intentional harassment and discrimination, Plaintiff is entitled to back pay, front pay and other appropriate equitable relief.

62. Plaintiff is further entitled to recover compensatory damages for future reputational injuries, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses pursuant to TEX. LAB. CODE ANN. § 21.2585(d).

63. Defendants engaged in such discriminatory practices with malice or with reckless indifference to Plaintiff's state-protected rights. Accordingly, she is entitled to an award of exemplary damages against defendants in an amount to be determined by the jury under Section 21.2585(b) of the Texas Labor Code.

64. Plaintiff is entitled to recover prejudgment interest in accordance with Texas law.

65. Plaintiff is entitled to recover reasonable attorney fees and costs pursuant to Section 21.259 of the Texas Labor Code.

### SEVENTH COUNT: RETALIATION

**(Section 21.055 of the Texas Labor Code)**

66. Plaintiff realleges and incorporates by reference all allegations set forth in paragraphs 1 through 66.

67. Defendant harassed Plaintiff after he complained about the agents' sexual harassment by: (1) failing to discipline the aforementioned agents for months after Plaintiff complained to her supervisors; (2) ignoring Defendant's own sexual harassment policy and procedure; (3) suspending Plaintiff on October 4, 2010 for two days without pay only a week after the agents' Plaintiff accused of harassment were terminated; (4) reassigning Plaintiff to Arlington DO and day shift against her wishes on November 1, 2010; (5) Suspending Plaintiff

for five days without pay on November 16, 2010; and (6) refusing to give Plaintiff any Super Bowl assignments even though she had previously been promised.

68. Defendants disciplined, demoted, and confined Plaintiff to working at a desk, even though she was a field agent, immediately after she complained about the sexual harassment, vandalism, and the subsequent hostile work environment.

69. Therefore, Defendant's conduct constituted an intentional, unlawful employment practice in violation of Section 21.055 of the Texas Labor Code.

70. By reason of Defendant's violation of the Texas Labor Code, Plaintiff is entitled to back pay, front pay and other appropriate equitable relief pursuant to Section 21.258(b) of the statute.

71. Plaintiff is further entitled to recover compensatory damages for future reputational injuries, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses pursuant to Section 21.2585(d) of the Texas Labor Code.

72. Defendant engaged in such discriminatory practices with malice or with reckless indifference to Plaintiff's state-protected rights. Accordingly, she is entitled to an award of punitive damages against Defendant in an amount to be determined by the jury under Section 21.2585(b) of the Texas Labor Code.

73. Plaintiff is entitled to recover prejudgment interest in accordance with Texas law.

74. Plaintiff is entitled to recover reasonable attorney fees and costs pursuant to Section 21.259 of the Texas Labor Code.

### V.   JURY TRIAL

75. Trial by jury is demanded.

## VI.   CONDITIONS PRECEDENT

76.   All conditions precedent to bringing this lawsuit have occurred, been performed or are or have been waived such that this lawsuit is properly before this Court.

## VII.   PRAYER

For the reasons stated above, Plaintiff requests that the Court summon the Defendant to appear and answer upon trial, enter judgment against the Defendants for the causes of action set forth above; awarding Plaintiff her actual damages, statutory relief, punitive damages, costs and attorneys' fees along with such other and further relief to which the Plaintiff might show herself to be lawfully entitled, whether in law or in equity.

**Dated:   September 16, 2011**            Respectfully submitted,


/s/ Andrea S. Loveless
Texas State Bar No. 24041889
320 Hemphill St
Fort Worth, TX 76104
(949) 679-4690
Fax (949) 679-4696
andrea@lovelesslawfirm.com

**ATTORNEYS FOR PLAINTIFF**